UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THETA CHI FRATERNITY, INC., <br><br> Plaintiff, <br><br> v. <br><br> LELAND STANFORD JUNIOR UNIVERSITY, et al., <br><br> Defendants. | Case No. 16-cv-01336-RMW <br><br> **ORDER REGARDING MOTIONS TO DISMISS AND STRIKE** <br><br> Re: Dkt. Nos. 14, 31 |

Before the court are motions to dismiss the complaint filed by plaintiff Theta Chi Fraternity, Inc. ("Theta Chi" or "plaintiff") against Leland Stanford Junior University, The Board of Trustees of Leland Stanford Junior University, Alumni Association of Chi Theta Chi House, The Board of Directors of Alumni Association of Chi Theta Chi House, and Thomas Abel Allison, Dkt. No. 1 ("Compl."). Defendants Alumni Association of Chi Theta Chi House and Thomas Abel Allison (collectively, the "Alumni Association defendants") filed a motion to dismiss and strike on May 13, 2016. Dkt. No. 14. Defendant The Board of Trustees of the Leland Stanford Junior University ("Stanford") filed a motion to dismiss on June 23, 2016. Dkt. No. 31. Plaintiff filed oppositions, defendants filed replies, and the court held a hearing on August 26, 2016.[1] For the reasons set forth below, the court grants both motions to dismiss with leave to amend and grants in

---

[1] *See* Dkt. Nos. 25, 33, 41, 42.

part and denies in part the Alumni Association defendants' motion to strike.

## I. BACKGROUND

Plaintiff Theta Chi brings this action against the defendants for alleged trademark infringement and related state law claims. Dkt. No. 1 ("Compl."). At issue here are two of plaintiff's federally-registered trademarks: the phrase THETA CHI[2] and the identifying Greek letters ΘΧ[3] (collectively, the "Theta Chi marks"). *Id.* ¶ 1.

As alleged in the complaint, plaintiff, a national fraternity founded in 1856 and based in New York, comprises a Grand Chapter, 114 active chapters, and seven "colonies." *Id.* ¶ 12. Stanford University is a research and teaching institution in California that is governed by its Board of Trustees. *Id.* ¶ 13. From 1920 to 1988, plaintiff maintained an active chapter at the university called the Alpha Epsilon Chapter of Theta Chi Fraternity. *Id.* ¶ 45. In 1928, members of the chapter created the Alpha Epsilon Alumni Association, a California tax-exempt corporation, to facilitate the chapter's operations. *Id.* ¶¶ 46-47. Following its formation, the Alumni Association purchased the structure at 576 Alvarado Row, Stanford, California (the "house") from the university and entered into a lease that identified the Alumni Association as owner of the house and the university as owner of the parcel of land on which the house is built. *Id.* ¶¶ 2, 48, 51. As membership declined in the 1970s, the chapter began allowing students unaffiliated with Theta Chi to live in the house. *Id.* ¶ 54. In 1988, the Grand Chapter declared the Alpha Epsilon Chapter inactive due to lack of membership and allegedly improper conduct by house residents. *Id.* ¶ 57.

Plaintiff asserts that in the mid-1980s, one or more members of the Alpha Epsilon Chapter disaffiliated with Theta Chi and formed a competing group called the "Ex-Theta Chi's" or "X-Theta Chi's"—denoted symbolically as "X-ΘΧ" and by name as "Chi Theta Chi." *Id.* ¶ 55. According to plaintiff, Chi Theta Chi holds itself out as having "evolved" from, "split apart" from, "broke away" from, or "succeeded" the Theta Chi Fraternity. *Id.* ¶ 65. Plaintiff states that in reality, Chi Theta Chi has no relation to or affiliation with Theta Chi Fraternity. *Id.* ¶ 66.

---

[2] U.S. Trademark Registration No. 1,240,699 (registered on May 13, 1983). Dkt. No. 1-1 Ex. 2.
[3] U.S. Trademark Registration No. 1,231,512 (registered on Mar. 15, 1983). Dkt. No. 1-1 Ex. 1.

The complaint alleges that after the Alpha Epsilon Chapter was declared inactive in 1988, members of Chi Theta Chi continued living in the house and using the Theta Chi marks in various deceptive ways. *Id*. ¶¶ 62, 67. The complaint alleges that, unbeknownst to plaintiff at the time, Chi Theta Chi used its name interchangeably with "Theta Chi" and infringed on plaintiff's trademarks. *See id*. ¶¶ 68-69. Plaintiff alleges that by falsely holding itself out to be the legitimate successor entity to the Alpha Epsilon Chapter of Theta Chi Fraternity, Chi Theta Chi capitalized on plaintiff's goodwill, reputation, and historical legacy to attract new residents and benefit financially. *Id*. Chi Theta Chi allegedly continued conducting operations under the name of the Alpha Epsilon Alumni Association, including availing itself of all rights under the lease, filing false tax forms, and using the Alumni Association's name and federal tax ID number—thus usurping the Alumni Association's corporate identity. *Id*. Plaintiff states that on March 21, 2012, without plaintiff's knowledge, Chi Theta Chi filed Amended Articles of Incorporation with the California Secretary of State to change the Alumni Association's name from "Alpha Epsilon Alumni Association of Theta Chi Fraternity" to "Alumni Association of Chi Theta Chi House." *Id*. ¶ 84.

According to plaintiff, the university assumed full control of the house after the lease ended on or about April 2, 2012, and residents began paying rent directly to the university by September 2012. *Id*. ¶¶ 86, 96. The university allegedly permitted Chi Theta Chi members to remain in the house. *Id*. ¶ 89.

Plaintiff maintains that Chi Theta Chi continued its infringement of the Theta Chi marks despite repeated demands by plaintiff to cease and desist. *Id*. ¶ 90. On October 30, 2012, plaintiff filed a lawsuit against the Alumni Association of Chi Theta Chi House for trademark infringement (*Theta Chi I*).[4] *Id*. ¶ 91. Stanford was not a party to that lawsuit. *See* Dkt. No. 1-1 Ex. 3. Nevertheless, plaintiff alleges that it coordinated with the university throughout the litigation "given [the university's] role in supervising and managing the activities of such groups as Chi

---

[4] The *Theta Chi I* complaint was originally filed on October 30, 2012, in the Santa Clara County Superior Court before the case was removed to the U.S. District Court for the Northern District of California on November 20, 2012 (Case No. 3:12-cv-05942-JSC). Dkt. No. 1 ¶¶ 91-92.

Theta Chi on campus." *Id*. ¶ 93. Theta Chi and the Alumni Association executed a settlement agreement and mutual release on January 11, 2013, and the matter was dismissed with prejudice. *Id*. ¶¶ 5, 94; Dkt. No. 1-1, Ex. 3 (Settlement Agreement and Mutual Release). The agreement was signed by defendant Allison in his capacity as president of the Alumni Association of Chi Theta Chi House. Among other things, the agreement directed the Alumni Association to:

- Permanently cease all use in commerce of the Theta Chi and Chi Theta Chi Marks in whole or in part as a trade name, trademark, service mark, or domain name," Dkt. No. 1-1 ¶ 1.a.i;

- Initiate its dissolution by filing its Certificate of Election to Wind Up and Dissolve with the California Secretary of State within 20 days after the date of the agreement, *id.* ¶ 1.c; and

- Complete its dissolution and terminate its existence by filing a Certificate of Dissolution with the California Secretary of State by no later than August 1, 2013, *id.*

The settlement agreement also provided:

> Theta Chi also agrees that the Association may use the name "Alumni Association of Chi Theta Chi House" in connection with filing the Certificate of Election to Wind Up and Dissolve Association . . . and the name "Alpha Epsilon Alumni Association of Theta Chi Fraternity" and/or "Alumni Association of Chi Theta Chi House" as may be reasonably required in the Association's state or federal income and other tax returns of the Association for tax year 2012 and their related correspondence and any final returns relating to the Association's dissolution in 2013.

*Id*. ¶ 1.a.iii. The parties released their existing claims against each other. *Id.* ¶ 5.a.

Plaintiff alleges that in November 2015, plaintiff observed new infringements by the Alumni Association and house residents in violation of the settlement agreement. Compl. ¶ 121. The alleged infringements include: continued use of the Theta Chi and Chi Theta Chi marks at the house, on social media, and on university-affiliated websites; multiple events hosted at "Chi Theta Chi" house such as "Theta Chi Thursday Anal Flora Collective Presentations;" continued filing of tax returns in the name of Theta Chi or Chi Theta Chi; and failure to dissolve by August 1, 2013. *Id*. ¶¶ 123-32.

Plaintiff commenced the instant litigation against the Alumni Association defendants and Stanford on March 18, 2016. Plaintiff claims that "certain members of Chi Theta Chi reside and

from January 2013 to present, have resided, in the House and/or served as management or leadership for the [Alumni] Association." *Id.* ¶ 15. Plaintiff also contends that the university "was aware of and permitted, and/or failed and refused to take action to prohibit" Chi Theta Chi's infringing activities. *Id.* ¶ 136. Plaintiff asserts that the Alumni Association defendants and Stanford are liable for federal trademark infringement and false designation of origin or unfair competition, federal and state trademark dilution, state unfair competition, breach of settlement agreement (in the case by the Alumni Association), and aiding/abetting breach of settlement agreement (in the case by Stanford).

## II. ANALYSIS

### A. Whether the Nonmoving Defendants are Properly Before the Court

#### 1. Alumni Association's Board of Directors

The Alumni Association and Allison move to strike the complaint's allegations against named defendant "The Board of Directors of Alumni Association of Chi Theta Chi House." Dkt. No. 14 at 17-18. They argue that under Federal Rule of Civil Procedure 17(b), an entity's capacity to be sued is governed by "the law of the state where the court is located" and that the California Corporations Code identifies only a "corporation" and an "association" as entities with the capacity to be sued. Cal. Corp. Code § 105. Defendants cite authority from other jurisdictions for the proposition that a corporation's board is not a separate legal entity that can be sued independently of the corporation itself. *See, e.g., Heslep v. Americans for African Adoption, Inc.*, 890 F.Supp.2d 671, 678 (N.D. W. Va. 2012); *Team Sys. Int'l LLC v. Haozous*, No. 14-cv-01018-D, 2015 WL 2131479, at *2 (W.D. Okla. May 7, 2015). While defendants do not cite any California authority describing whether a corporate board of directors has the capacity to be sued, the court finds the reasoning of the cases above persuasive. Plaintiff's allegations against "The Board of Directors of Alumni Association of Chi Theta Chi House" are STRICKEN.

Plaintiff acknowledges that "The Defendant Board is comprised of seven identifiable individuals." Dkt. No. 25 at 16. To the extent that plaintiff can allege facts that would give rise to individual board members' liability, plaintiff can place those allegations in an amended complaint.

### 2. **Does 51-100**

Next, the Alumni Association defendants move to strike the complaint's allegations against "Does 51 Through 100" on the grounds that fictitious, or "Doe" pleading, is disfavored in federal court. Dkt. No. 14 at 18 (citing *Perez v. Banana Republic, LLC*, No. 14-cv-01132-JCS, 2014 WL 2918421, at *8 (N.D. Cal. June 26, 2014)). However, the Ninth Circuit has allowed claims to proceed against "Doe" defendants where "the identity of alleged defendants [was not] known prior to the filing of a complaint." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). In this case, the complaint alleges that plaintiff is unaware of the true names and capacities of some defendants who may have infringed its trademarks. *See* Compl. ¶ 18. Accordingly, the court finds it premature to strike plaintiff's "Doe" allegations at this time.

### 3. **Leland Stanford Junior University**

In its opposition to the motion to dismiss by defendant The Board of Trustees of Leland Stanford Junior University, plaintiff argues that the court should construe the motion as having been filed by both Stanford's Board of Trustees and the separate, named defendant Leland Stanford Junior University. Dkt. No. 41 at 3-5. Defendant The Board of Trustees of Leland Stanford Junior University argues that it is the same legal entity as "Leland Stanford Junior University." This issue has not been properly brought before the court, and so the court declines to rule on it at this time.

### B. **Request for Judicial Notice**

In connection with their motion to dismiss, the Alumni Association defendants request that the court take judicial notice of four documents: (1) e-mail correspondence from defense counsel to plaintiff's counsel on January 11, 2016 in response to plaintiff's letter dated January 4, 2016, Dkt. No. 15-1; (2) Domestic Nonprofit Corporation Certificate of Election to Wind Up and Dissolve filed with the California Secretary of State on February 11, 2013, Dkt. No. 15-2; (3) e-mail correspondence from defense counsel to plaintiff's counsel on January 21, 2016 confirming filing of the Certificate of Dissolution for the Alumni Association of Chi Theta Chi House with the California Secretary of State, Dkt. No. 15-3; and (4) a Domestic Nonprofit Corporation Certificate of Dissolution for the Association filed with the California Secretary of State on

January 21, 2016, Dkt. No. 15-4. Dkt. No. 15. Plaintiff opposes the request. Dkt. No. 25 at 19-22.

In ruling on a motion to dismiss, "courts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (citation omitted). Furthermore, a court may take judicial notice of "undisputed matters of public record." *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

The court finds that it is appropriate to take judicial notice of the email communications between counsel—items (1) and (3) above—because the complaint alleges the contents of these documents and because plaintiff does not dispute the emails' authenticity. *See* Compl. ¶ 148 (referencing the January 11, 2016 email); ¶ 149 (referencing the January 21, 2016 email). Plaintiff's argument that the emails are irrelevant is unpersuasive. The emails relate to whether plaintiff complied with the notice and cure provision in the settlement agreement that plaintiff claims the Alumni Association breached.[5] *See* Dkt. No. 1-1 Ex. 3 § 4. While the court takes judicial notice of the fact that counsel made particular statements in these emails, the court does not take judicial notice of the truth of counsel's factual assertions in the emails to the extent that the emails are inconsistent with the allegations in the complaint.

The court also finds it appropriate to take judicial notice of the filings with the California Secretary of State—items (2) and (4) above—because they are public records. While plaintiff asserts that these filings "do not appear to be authentic," Dkt. No. 25 at 21 n.10, plaintiff gives no reason why the documents appear inauthentic. The court notes that the California Secretary of State's website, on which plaintiff relies for the proposition that the "Alumni Association of Chi Theta Chi House" was still active as of January 4, 2016, now indicates that this organization has "dissolved."[6] In any event, the court merely takes judicial notice of the existence of the February 11, 2013 and January 21, 2016 filings and the fact that the Alumni Association formally dissolved.

---

[5] Moreover, plaintiff agrees that plaintiff's performance of contractual obligations is an element of plaintiff's contract claims. Dkt. No. 25 at 14.
[6] *Compare* Dkt. No. 1-1 at ECF p. 48 *with* Cal. Sec. of State, *Business Search – Results*, http://kepler.sos.ca.gov/ (search in search bar for Entity No. C0131837) (last visited Aug. 25, 2016).

7

1    The court does not take judicial notice of the truth of other facts contained in these filings.

2        **C.**    **Motions to Dismiss**

3              1.    **Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted).

          2.    **Counts 1 & 2:  Federal Trademark Infringement and False Designation of Origin / Unfair Competition**

To state a claim for federal trademark infringement, a plaintiff must allege that (1) it has a valid, protectable trademark, and (2) that defendants' use of the mark in commerce is likely to cause confusion. *See* 15 U.S.C. § 1114(1)(a); *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969. (9th Cir. 2007). The parties agree that the claim for false designation of origin or unfair competition has the same elements and follows an identical analysis in this case. *See* 15 U.S.C. § 1125(a). Defendants proffer several reasons why plaintiff's allegations of trademark infringement

1  and unfair competition fail to state a claim. The court examines each below.

### a.  Likelihood of Confusion

The Alumni Association defendants and Stanford both argue that plaintiff cannot show likelihood of confusion. A likelihood of confusion exists "when a consumer viewing a service mark is likely to purchase the services under a mistaken belief that the services are, or [are] associated with, the services of another provider." *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996). The confusion must "be probable, not simply a possibility." *Id*. Furthermore, to constitute trademark infringement, use of a mark must be likely to confuse an "appreciable number" of "reasonably prudent" consumers. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002). In assessing likelihood of confusion, courts consider:

> 1. The strength of the plaintiff's trademark;
> 2. The similarity of the marks;
> 3. The proximity or relatedness of the goods or services;
> 4. The defendants' intent in selecting the marks;
> 5. Evidence of actual confusion;
> 6. The marketing channels used;
> 7. The likelihood of expansion of product lines; and,
> 8. The degree of care consumers are likely to exercise.

*Id.* at 1140 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). "Although some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

Here, plaintiff has not pled sufficient facts to make a likelihood of confusion plausible. The Theta Chi Marks cover common Greek letters that are hardly fanciful. The Theta Chi marks were registered to indicate "membership in applicant fraternal organization." Dkt. No. 1-1 Ex. 1-2. Defendant Stanford is not a fraternal organization and is thus not a direct competitor with plaintiff. While defendant Alumni Association was arguably a fraternal organization, as noted above, the Alumni Association formally dissolved in January 2016 before plaintiff filed this suit.[7] Dkt. No.

---

[7] At the hearing on the instant motions, however, counsel for the Alumni Association indicated that an entity known as the "Alumni Association of 576 Alvarado Row" now exists.

15-4. One might infer that the group calling itself the "Ex-Theta Chi's" in the mid-1980s intended to evoke the name of the Theta Chi fraternity. *See* Compl. ¶¶ 55, 65. However, plaintiff's allegations regarding confusion are undermined by the fact that plaintiff voluntarily left Stanford's campus in 1988, *id.* ¶ 57, and plaintiff does not allege that it complained about this "imposter" organization until 2011, *id.* ¶ 71.

Moreover, the complaint does not plead any facts demonstrating that any member of the public has been under the mistaken impression that a co-ed housing cooperative at Stanford (*id.* ¶¶ 63, 152; Dkt. No. 1-1 at ECF p. 51) is actually an all-male fraternity that left campus in 1988 (Compl. ¶¶ 30, 45). The court finds persuasive defendants' argument that a reasonably prudent Stanford student seeking to join an all-male fraternity would not visit a webpage for a co-ed cooperative house and believe that he has found what he is looking for. The complaint does not even allege facts suggesting a single instance of initial interest confusion. Moreover, to the extent that non-consumer confusion is relevant to this analysis, the complaint does not allege a single instance of non-consumer confusion, even though the complaint alleges that the Chi Theta Chi organization has existed at Stanford since the mid-1980s.

Because the complaint fails to set forth sufficient allegations to support a likelihood of confusion, counts 1 and 2 of plaintiff's complaint are dismissed.

### b. Indirect Infringement

Stanford also argues that it cannot be indirectly liable for the actions or speech of the Alumni Association defendants or Stanford students. Plaintiff's theory of secondary liability is not clear from the face of the complaint, but in opposition to Stanford's motion, plaintiff clarifies that it is pursuing direct and contributory infringement claims against Stanford. Dkt. No. 41 at 7. In the instant case, it appears that plaintiff alleges that Stanford has contributed to two categories of predicate acts of asserted direct infringement: (1) conduct on the premises of the house itself, such as hosting events, using the Theta Chi marks; and (2) allowing such activities to be promoted using Stanford online and print media.

"Contributory infringement occurs when the defendant either intentionally induces a third

party to infringe the plaintiff's mark or supplies a product to a third party with actual or constructive knowledge that the product is being used to infringe the service mark." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 983 (9th Cir. 1999) (citing *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853–54 (1982)). When a defendant supplies a service, rather than an infringing "product," courts "consider the extent of control exercised by the defendant over the third party's means of infringement." *Id.* at 984. Allegations of "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark" could suggest contributory infringement. *Id.* Plaintiff has pointed to no factual allegations that Stanford intentionally induced any infringement, so the court considers whether Stanford knew of acts of direct infringement and exercised the requisite level of control over the means of infringement.

Two Ninth Circuit cases are particularly instructive in light of plaintiff's allegations. In *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996), a trademark owner sued the landlord of a swap meet at which individual booth operators allegedly rented space and sold infringing items. The Ninth Circuit reversed the district court's dismissal of the claims against the landlord and held that "a swap meet can not disregard its vendors' blatant trademark infringements with impunity." *Id.* at 265. The Ninth Circuit cited *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992) for the proposition that direct knowledge of infringement was not required; rather, a landlord's willful blindness to direct infringement was sufficient to impose secondary liability. *Id.* In another example, *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 942-43 (9th Cir. 2011), the Ninth Circuit upheld a jury's verdict finding the defendant website operators liable for contributory infringement for hosting websites that directly infringed Louis Vuitton's trademarks. The Ninth Circuit explained: "Appellants had control over the services and servers provided to the websites. Stated another way, Appellants had direct control over the 'master switch' that kept the websites online and available." *Id.* at 943. The court applies these holdings to the instant case.

With respect to plaintiff's claims about activities at the house itself, under *Fonovisa*, as landlord of 576 Alvarado Row, Stanford could be liable for the infringing acts of the residents of

11
16-cv-01336-RMW
ORDER REGARDING MOTIONS TO DISMISS AND STRIKE

1    the house if Stanford actually or constructively knew about those acts. A landlord has the power to

2    take actions including, for example, evicting known torfeasors from the landlord's property. The

3    problem with plaintiff's complaint is that it does not clearly allege when or suggest how Stanford

4    officials became aware of the allegedly infringing conduct. *See, e.g.*, Compl. ¶ 145 ("***After***

5    learning of the foregoing violations, Theta Chi's Executive Director immediately notified the

6    University's OGC.") (emphasis added). Unless plaintiff can allege facts to suggest that Stanford

7    officials were aware of direct infringement at the time it happened, plaintiff cannot state a claim

8    for contributory infringement. The court also notes that *Fonovisa* does not suggest that a landlord

9    can be secondarily liable for direct infringement by individuals who are not renting a space. Theta

10   Chi has presented neither any authority nor any analysis to suggest that Stanford should be liable

11   for non-residents' conduct at the house.

12        With respect to plaintiff's claims that Stanford allowed infringing activities to be promoted

13   using Stanford's online and print media, plaintiff has failed to state a claim. In *Louis Vuitton*, the

14   Ninth Circuit found the defendant website operators liable because they directly controlled the

15   servers and services that hosted infringing websites. 658 F.3d at 943. In contrast, in the instant

16   case, plaintiff has stopped short of alleging that Stanford actually controls any of the media

17   allegedly used to promote infringement. For example, plaintiff describes the alleged relationship

18   between Stanford and *The Stanford Arts Review*, a publication allegedly used to promote

19   infringing events, as follows:

> 141. *The Stanford Arts Review* is believed to be affiliated with the University and with *The Stanford Daily*, is believed to be a University sponsored or funded media project, and is believed to have actual or apparent authority to print content for or on behalf of the University, using the University's name, reputation and goodwill to increase readership and viewership within and among the University student population and beyond.

24   Compl. ¶ 141. Plaintiff does not allege that university officials control what *The Stanford Arts*

25   *Review* prints, and, indeed, Stanford asserts that *The Stanford Daily* is "circulated on campus by a

26   legal entity separate from Stanford," Dkt. No. 31 at 3. Nor does plaintiff allege that Stanford

27   controls social media outlets such as Twitter or Facebook, which plaintiff alleges were used for

28

1  infringement. Accordingly, plaintiff has failed to state a claim for contributory infringement.

2  For the foregoing reasons, plaintiff's indirect infringement claims against Stanford are
3  dismissed with leave to amend.

###    c.    Alternate Grounds for Dismissal

5  In addition to their arguments regarding failure to allege likelihood of confusion,
6  defendants raise several alternative grounds for dismissal including: (1) failure to allege use in
7  commerce by the Alumni Association defendants; (2) failure to allege that Allison was a "moving
8  force" behind any infringement; and (3) fair use by Stanford. Defendants' arguments are
9  persuasive and merit careful consideration. A central problem with plaintiff's complaint is that it
10 does not clearly point out which defendant that plaintiff is accusing of particular, allegedly
11 wrongful acts. For example, to the extent that plaintiff claims infringement from the use of its
12 marks in a *Stanford Arts Review* article, *see* Compl. ¶¶ 133-34, the complaint does not allow the
13 court to determine which defendant is being accused because it uses the passive voice to note that
14 "on information and belief," the article's author "was invited to attend the Theta Chi Thursday"
15 presentations by some unidentified individual or entity, *id.* ¶ 134. Plaintiff's vague allegations
16 against "the Chi Theta Chi Defendants," which do not distinguish between the Alumni
17 Association, Allison, or other Chi Theta Chi board members, *see id.* ¶¶ 168-69, are similarly
18 deficient. If plaintiff believes that Allison is individually responsible for infringement, plaintiff
19 should make allegations that are specific to Allison. *See, e.g.*, *McHenry v. Renne*, 84 F.3d 1172,
20 1179 (9th Cir. 1996) (affirming dismissal of complaint that did not allow the judge or opposing
21 counsel "to determine who is being sued for what.").

22 In light of the court's ruling on likelihood of confusion, the court need not rule on these
23 other grounds for dismissal at this time. However, plaintiff will be allowed to amend its complaint,
24 and the court strongly encourages plaintiff to address defendants' alternate grounds for dismissal
25 to the extent possible.

###    3.    Count 3:  Trademark Dilution Under the Lanham Act

27 Defendants next move to dismiss plaintiff's trademark dilution claims on the grounds that

plaintiff has not sufficiently alleged that its marks are famous. To state a claim for trademark dilution, a plaintiff must allege that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007) (citing 15 U.S.C. § 1125(c)). The analysis is the same under state law. *Id.* "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In determining whether a mark is sufficiently famous, courts may consider:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered.

*Id.*

Dilution "is a cause of action 'reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value.'" *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004) (quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999)). Federal law "extends dilution protection only to those whose mark is a 'household name.'" *Id.* "Household name" status is difficult to achieve. For example, in *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F.Supp.3d 1057, 1066-67 (N.D. Cal. 2015), another court in this district dismissed a dilution claim despite the plaintiff's allegation that 20 million U.S. users had downloaded the plaintiff's software application.

In an example analogous to the instant case, *Sigma Chi Fraternity v. Sethscot Collection*, No. 98-cv-02102, 2000 WL 34414961, at *10 (S.D. Fla. Apr. 7, 2000), a Florida district court granted summary judgment in favor of a defendant accused of diluting a fraternity's trademark. The court found that the name "Sigma Chi" and the Greek letters denoting Sigma Chi were not sufficiently famous to warrant protection despite the fact that Sigma Chi was "the second largest

collegiate social fraternal group," with "226 undergraduate chapters, . . . approximately 120 alumni chapters (more than any other Greek social organization), approximately 196,000 alumni members, and approximately 12,000 undergraduate members." *Id.* at *1, *10. Notably, *Sigma Chi* was decided under the pre-2006 version of Section 1125(c), which allowed fame to be evaluated in a particular market "niche" rather in the eyes of the "general consuming public of the United States."[8] Under the current statute, "[f]ame in just one industry or line of business or only to professional buyers in one market niche is not sufficient." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:105 (4th ed. Sep. 2016 Update) (collecting cases); *see Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 678 (W.D. Tex. 2008) (granting summary judgment for defendant on dilution claim where plaintiff submitted evidence that University of Texas Longhorn logo was famous to college football fans but not to general consuming public).

In the instant case, plaintiff relies on the following allegations to show that its marks are famous:

- Theta Chi has obtained federal trademark registration for its marks, Compl. ¶ 1;

- Theta Chi "is one of the oldest and most widely regarded college fraternities in the United States" with "more than 175,000 initiated members since its founding in 1856, its 144 Active Chapters, and 7 Official Colonies," *id.* ¶¶ 12, 194;

- "Theta Chi has expended substantial amounts of time, expense and energy with its strategic growth and expansion plan," *id.* ¶ 194; and

- "Theta Chi's many notable philanthropic and community service oriented activities have enabled the Theta Chi name and other marks to attain a high level of actual recognition among the consuming public," *id.*

*See also* Dkt. No. 25 at 12 (citing the above).

These allegations are not sufficient to show that plaintiff's marks are famous within the meaning of 15 U.S.C. § 1125(c)(2). Of the factors listed in Section 1125(c)(2)(A), only the

---

[8] *See id.* at *10 ("While the name 'Sigma Chi' and the Greek letters denoting Sigma Chi are a closer question when looked at in the relevant market niche, they still come up short.").

15
16-cv-01336-RMW
ORDER REGARDING MOTIONS TO DISMISS AND STRIKE

1   registration of the Theta Chi marks favors plaintiff. Plaintiff does not allege that it has advertised
2   and/or publicized the Theta Chi marks; it only alleges that it has expended resources "with its
3   strategic growth and expansion plan," which may or may not be related to plaintiff's marks.
4   Moreover, given that courts have ruled against dilution claims by plaintiffs with 20 million users,
5   as in *Arcsoft*, or 196,000 alumni members, as in *Sigma Chi*, the allegation that Theta Chi has had
6   175,000 members *over the course of 160 years* is insufficient to support a claim that the Theta Chi
7   marks are famous. Indeed, the fact that Theta Chi voluntarily left Stanford in 1988 in part due to a
8   lack of membership, *see* Compl. ¶¶ 54, 57, suggests that the Theta Chi marks were not even
9   famous on Stanford's campus. Finally, plaintiff's allegation regarding "a high level of actual
10  recognition among the consuming public" is simply a formulaic recitation of part of the dilution
11  statute, and the court need not rely on it. *See Iqbal*, 556 U.S. at 678.
12      Because plaintiff has not made more than conclusory allegations of fame, plaintiff's
13  dilution claims are dismissed.[9]

### 4. Remaining State Law Claims

15  Because plaintiff's federal claims are being dismissed, the court must decide whether to
16  exercise supplemental jurisdiction over the remaining state law claims. Original jurisdiction may
17  be based on the existence of a federal question or diversity, as set forth in 28 U.S.C. sections 1331
18  and 1332. The complaint asserts federal question jurisdiction over plaintiff's federal trademark,
19  false designation of origin, and dilution claims (counts 1-3) and supplemental jurisdiction over
20  plaintiff's state law claims (counts 4-7). Compl. ¶¶ 23-24. Plaintiff has not asserted that diversity
21  jurisdiction exists, and the court cannot detect any allegation in the complaint to suggest that at
22  least $75,000 is in controversy as required by 28 U.S.C. § 1332. Accordingly, the only potential
23  basis for maintaining jurisdiction over plaintiff's state law claims is supplemental jurisdiction
24  under 28 U.S.C. § 1367.
25      When all of the federal claims are dismissed early in a case, "the district court 'may,' under

---

[9] Accordingly, the court need not address Stanford's argument that plaintiff has not alleged that any action by Stanford caused dilution.

16
16-cv-01336-RMW
ORDER REGARDING MOTIONS TO DISMISS AND STRIKE

section 1367(c), decline to exercise its supplemental jurisdiction . . . and ordinarily 'should' dismiss the state law claims." *Albingia Versicherungs A.G. v. Schenker Intern. Inc.*, 344 F.3d 931, 938 (9th Cir. 2003), amended on other grounds, 350 F.3d 916 (9th Cir. 2003)). "[I]n in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Plaintiff offers no reason why the court should exercise supplemental jurisdiction over plaintiff's state law claims if the federal claims are dismissed. Accordingly, the court, in its discretion, dismisses counts 4-7 of the complaint.

### III.    ORDER

For the foregoing reasons, defendants' motions to dismiss are GRANTED with leave to amend. Furthermore, the Alumni Association defendants' motion to strike is GRANTED as to "The Board of Directors of Alumni Association of Chi Theta Chi House" and DENIED as to "DOES 51-100." Within 14 days, plaintiff shall submit an amended complaint that corrects the deficiencies identified in this order.

**IT IS SO ORDERED.**

Dated: August 30, 2016

_____
Ronald M. Whyte
United States District Judge